UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DAVID A. FOSTER**,

    Plaintiff,

v.                                                            CASE NO. 8:24-cv-02617-WFJ-TGW

**METROPOLITAN LIFE
INSURANCE COMPANY** and
**MICHAEL KHALAF**,

    Defendants.
_____/

## ORDER

Before the Court are Defendants Metropolitan Life Insurance Company ("MetLife") and Michael Khalaf's[1] Motion to Dismiss the Amended Complaint. Dkt. 36. *Pro se* Plaintiff David A. Foster has responded in opposition, Dkts. 37 & 40, and Defendants replied. Dkt. 42. The Court also permitted Plaintiff to file a surreply. Dkt. 43. As explained below, Defendants' Motion to Dismiss is granted.

## BACKGROUND

This case centers on Plaintiff Foster's disability benefits paid by Defendant MetLife. Following his stroke in 2020, MetLife paid Mr. Foster disability benefits

---

[1] Mr. Khalaf is MetLife's CEO. Dkt. 36 at 1 n.1. Plaintiff's Statement of Claim was made against Mr. Khalaf as CEO of MetLife, Dkt. 1-4 at 1; Dkt. 29 at 2, but the summons was served only upon MetLife's registered agent. Dkt. 1-1. Plaintiff has alleged no duty owed to him by Mr. Khalaf apart from Mr. Khalaf's role as CEO of MetLife, his disability insurer. Dkt. 29 at 2-3.

under an employee welfare benefit plan (the "Plan"). Dkt. 29 at 4; Dkt. 37 at 1. The Plan is an employee welfare plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and funded through insurance issued by MetLife. Dkt. 1-3; Dkt. 29 at 5.

After learning that Mr. Foster had earned income while receiving disability benefits, MetLife sent Mr. Foster a letter requesting information (his 2023 W-2 and pay stubs) to determine whether MetLife needed to recoup any overpayments. Dkt. 1-4 at 3. On May 28, 2024, MetLife sent Mr. Foster another letter informing him that MetLife had overpaid disability benefits under the Plan and would recoup the overpayment by withholding his monthly disability benefit. *Id.* at 5–6; *see* Dkt. 1-3 at 36, 52 (showing overpayment provisions in Plaintiff's employee welfare plan). Initially, MetLife had only Mr. Foster's 2023 W-2 and calculated an overpayment of $530.40. Dkt. 1-4 at 5–6, 16. Mr. Foster appealed MetLife's calculation and provided his pay stubs. Dkt. 12 at 7–8, 19–28.

On June 6, 2024, MetLife denied Mr. Foster's appeal. Dkt. 1-4 at 10. After receiving Mr. Foster's pay stubs, MetLife sent an updated letter dated June 11, 2024, explaining its overpayment calculations, which were adjusted based on the information from the pay stubs. *Id.* at 12–14. In that letter, MetLife explained that it had calculated Mr. Foster's earnings over the periods during which he had been overpaid Plan benefits (from the 19th of each month to the 18th of the following

2

month), which meant that the numbers did not align with the pay periods on Mr. Foster's pay stubs. *Id.* at 13. MetLife's calculations were based on Mr. Foster's gross earnings from the pay stubs and then offset by 50%. *Compare* Dkt. 1-4 at 12–13 *with* Dkt. 12 at 19–28; *see also* Dkt. 1-3 at 26, 36.

Mr. Foster, however, contends that Defendants "used made-up payment amounts and pay dates, then refused to correct after I spoke with my case manager to remedy the situation." Dkt. 29 at 4. Mr. Foster submitted his own calculations on how much MetLife overpaid, which are based on his net earnings. *See* Dkt. 12 at 11–12, 19–28. Additionally, Plaintiff's calculations do not consider that MetLife adjusted the *bi-weekly* pay periods in his pay stubs to align with the timing of Plaintiff's *monthly* disability payments, which were then offset by 50% per the terms of the Plan. *See* Dkt. 1-4 at 13 ("Your [long term disability] benefits are paid from the 19th to the 18th of each month, so we used the above noted dates for the offsets just so that the calculations of your benefits for those dates would be more straightforward and not confusing." (emphasis omitted)); Dkt. 1-3 at 36 ("After the first 12 months following Your Elimination Period, We will reduce Your Monthly Benefit by 50% of the amount You earn from working while Disabled.").

Plaintiff initially filed suit in state court on July 10, 2024, in the Sixth Judicial Circuit, alleging that MetLife had engaged in "business malpractice." Dkt. 1-4 at 1. MetLife removed the case from state court on November 8, 2024, asserting that "this

3

Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court pursuant to 28 U.S.C. § 1441(b), in that it seeks to recover damages for the administration of an employee welfare benefit plan and therefore arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*" Dkt. 1 ¶ 7.

Subsequently, MetLife filed a motion to dismiss, arguing Plaintiff's state law claim of "business malpractice" is "completely preempted" by ERISA. *See* Dkt. 9. This Court granted Defendants' motion to dismiss on November 21, 2024, noting that "[t]he claim is preempted by ERISA. Mr. Foster is encouraged to contact a legal aid group for assistance. Often[,] they will help without charge[,] and filing complaints in federal court can be complex and difficult. He might try Bay Area Volunteer Legal Assistance, at (800) 625-2257." Dkt. 13. On December 13, 2024, Mr. Foster filed a "response" to the Court's Endorsed Order dismissing his Complaint without prejudice. Dkt. 15. This Court struck Mr. Foster's "response," clarifying that Plaintiff's Complaint was dismissed, and suggesting he consult legal advice from a legal services group due to complexities of filing a federal lawsuit. Dkt. 16.

Mr. Foster then filed a motion to amend on January 14, 2025, Dkt. 18, which the Court granted on March 24, 2025 (the "MTA Order"). Dkt. 28. In the MTA Order, the Court explained that Defendants properly removed the case to federal

4

court, Mr. Foster's state law claim of "business malpractice" was preempted, and that any amended complaint must state a claim under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 10. On April 4, 2025, Plaintiff filed his Amended Complaint, seeking $150,000 in damages for "business malpractice," "overall mistreatment," and discrimination under the Americans with Disability Act (the "ADA").[2] Dkt. 29 at 4; Dkt. 29-1 at 1. Defendants responded by filing the instant Motion to Dismiss the Amended Complaint. Dkt. 36.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief in order to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

In considering a motion to dismiss, the court must construe the facts in the light most favorable to the Plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485

---

[2] As an initial matter, the Court finds Plaintiff's ADA discrimination claim, which was summarily asserted in the civil coversheet of his Amended Complaint (*see* Dkt. 29-1 at 1), is due to be dismissed. "The ADA bars employers from 'discriminat[ing] against a qualified individual on the basis of disability.'" *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (alteration in original) (quoting 42 U.S.C. § 12112(a)). The ADA does not even apply to the instant case since Defendants are not Plaintiff's employer. *See* 42 U.S.C. § 12111(2) (defining "covered entities" subject to the ADA's prohibition on discrimination as "an employer, employment agency, labor organization, or joint labor-management committee."). Nor are there any allegations that Mr. Foster was a "qualified individual" who suffered an adverse *employment action* because of his "disability" as the ADA defines those terms. *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1267–68 (11th Cir. 2014).

5

(11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim is facially plausible when the court can draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662.

However, because Mr. Foster is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). While the Court applies less stringent pleading standards to complaints in *pro se* actions, a *pro se* plaintiff remains subject to the same laws and rules of the Court, including the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida, as a litigant represented by counsel. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

At the dismissal stage, a court considers only the four corners of the complaint and the exhibits attached to the complaint in a motion to dismiss. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). However, "a document outside the four corners of the complaint may . . . be considered" as incorporated by reference if the document "is central to the plaintiff's claims and is undisputed in terms of authenticity," regardless of whether it is "mentioned in" or "attached to" the complaint. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th

Cir. 2005); *see Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024).

## DISCUSSION

Based on a careful review of the pleadings, the Court grants Defendants' motion to dismiss. As discussed below, Mr. Foster's "business malpractice" claim is completely preempted under ERISA, and Plaintiff fails to state a claim under 29 U.S.C. § 1132(a)(1)(B).

### I.      ERISA's Complete Preemption Standard

ERISA's complete preemption test can turn an "ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). Complete preemption comes from ERISA's civil enforcement provision in § 502(a). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotations omitted). This section is "a comprehensive civil enforcement scheme," which indicates that "Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 208–09. "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

In *Davila*, the Supreme Court established a two-part test to determine whether a plaintiff's state law claims are completely preempted under ERISA. *Id.* at 210. As the Eleventh Circuit summarized, "[t]he *Davila* test thus requires two inquiries: (1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." *Conn. State Dental*, 591 F.3d at 1345. "If any part of the *Davila* test is not met, the Court lacks subject-matter jurisdiction and must remand the case." *Sarasota Cnty. Pub. Hosp. Dist. v. Cigna Healthcare of Fla., Inc.*, No. 8:23-CV-263-KKM-TGW, 2023 WL 2867064, at *3 (M.D. Fla. Apr. 10, 2023) (citing *Conn. State Dental*, 591 F.3d at 1344–45).

Here, Plaintiff (again) challenges the Court's subject matter jurisdiction to hear the case. *See* Dkt. 40 at 2. The Court's MTA Order previously found that both prongs of the *Davila* inquiry were satisfied. First, Mr. Foster's ERISA Plan was established and maintained by his employer to provide disability benefits to beneficiaries, which falls within the scope of ERISA. *See Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1269 (11th Cir. 2006); Dkt. 1-3. As for Mr. Foster's "business malpractice" and "overall mistreatment" claims to recover his benefits, it is based solely on MetLife's allegedly inaccurate calculation under the terms of the Plan, and MetLife's potential liability derives entirely from the rights and obligations established by the Plan. *See Conn. State Dental*, 591 F.3d at 1345, 1353. Therefore, Mr. Foster's claims also satisfy the low threshold for statutory

8

standing, and he could have brought these claims under § 502(a). *See id.*; 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").

Second, whether Mr. Foster is entitled to relief under his state law claim of "business malpractice" would necessarily require examining and interpreting the terms of the Plan. Dkt. 29 at 4. The trier of fact will need to determine if the 50% reduction of monthly benefits based on the beneficiary's gross income is allowed under the Plan. Dkt. 1-3 at 36, 52. As such, ERISA completely preempts Plaintiff's state law claims.

## II. Failure to State a Claim under 29 U.S.C. § 1132(a)(1)(B)

Under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B), a participant may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1326–27 (11th Cir. 2020).

Here, Plaintiff's Amended Complaint does not even mention or cite Section 1132(a)(1)(B). *See* Dkt. 29. The Court's MTA Order specifically reminded Plaintiff that he must assert a cause of action under Section 1132(a)(1)(B) in any future

9

complaint. Dkt. 28 at 10. Plaintiff failed to heed the Court's instruction. As the Court reminded Plaintiff back in December 2024, any amended complaint must state a cause of action cognizable in federal court.[3] Dkt. 16. Plaintiff's failure to do so, despite being provided several opportunities, is fatal to his Amended Complaint. As such, the Court grants Defendants' motion to dismiss.

## CONCLUSION

Where a more carefully drafted complaint might state a claim, a *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citation omitted). A district court, however, is not required to permit amendment if "there has been . . . repeated failure to cure deficiencies by amendments previously allowed" or "amendment would be futile." *Id.* This Court previously granted Mr. Foster's request to amend his complaint, Dkt. 28, and reminded Plaintiff three times of the deficiencies in his pleadings. *See* Dkt. 13; Dkt. 16; Dkt. 28 at 10. Plaintiff failed to cure the deficiencies in his complaint, despite

---

[3] Even if Plaintiff properly asserted a Section 1132(a)(1)(B), the Court would still find that Plaintiff failed to state a claim upon which relief could be granted. Defendants previously contended that it is not mathematically possible for Mr. Foster to state a claim under 29 U.S.C. § 1132(a)(1)(B). Dkt. 21 at 8. The Court agrees. Based on the pleadings and attached exhibits, MetLife accurately calculated the amount of earnings to be offset during the five months in which Plaintiff had a part-time job by adjusting the pay periods in Mr. Foster's pay stubs to coincide with Plaintiff's monthly benefits. *See* Dkt. 1-4 at 12-13; Dkt. 12 at 19-28. Put differently, there were five months of overpaid benefits, during which the Plaintiff was paid $132.60 in benefits rather than $0, due to his income from working. Dkt. 36 at 3 n.3; Dkt. 12 at 19-28; Dkt. 1-4 at 12-13. At the time of filing suit in state court, MetLife had already withheld one month of benefits in the amount of $132.60 to recoup the overpayment. By the time Plaintiff filed his Motion to Amend on January 14, 2025 (Dkt. 18), the entire overpaid amount ($663.00) had already been recouped by November 18, 2024, because five months of benefits ($132.60 X 5 months = $663.00) were withheld by MetLife. Dkt. 21 at 8. The Plan allows for recoupment (by withholding future disability benefits) when the beneficiaries' (gross) earnings exceed twice the amount of their monthly benefit while working. *See* Dkt. 1-3 at 26, 36, 52.

the Court's warnings that such a failure would result in dismissal with prejudice. Dkt. 28 at 10.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion to Dismiss the Amended Complaint, Dkt. 36, is **GRANTED.**

2. Plaintiff Foster's Amended Complaint, Dkt. 29, is **DISMISSED with prejudice.**

3. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, and to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, on June 4, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Plaintiff, *Pro se*
Counsel of Record